(119 So. 40)

No. 28237.

## Succession of MAHONEY.

Oct. 29, 1928.   Rehearing Denied Nov. 26, 1928.

Raymond Gauche, of New Orleans, for appellant.

Olivier S. Livaudais and Pierre D. Olivier, both of New Orleans, for appellees.

ST. PAUL, J.   John L. Mahoney died intestate on January 6, 1924, leaving a widow in community and six children, three of age and three still minors.

On January 16th the widow petitioned the court to be confirmed as natural tutrix of her minor children, but thereafter proceeded no further with her application.

On March 24th Henry C. Ludlow represented to the court that the deceased was indebted to him in the sum of $8,500 on two promissory notes, for the payment whereof he had a vendor's lien upon a certain stock of automobile tires and office fixtures sold by him to deceased, of which the widow and

major heirs were in possession, and which he feared they would dispose of to the prejudice of his claim. Wherefore he prayed that said stock of tires be sequestered, that the public administrator be appointed administrator of the succession of the deceased, and that he have judgment against the succession of said deceased for the amount of his claim, with recognition of his vendor's lien upon the property sequestered.

The stock of automobile tires and the office fixtures were thereupon seized by the sheriff, and in due course they were sold by order of court, and the proceeds retained by the sheriff to await the result of this controversy.

## I.

■ The widow opposed the appointment of the public administrator, and prayed that she herself be appointed administratrix, and in due course she was so appointed, and qualified as such November 26, 1924. She also excepted that the action was prematurely brought because said Ludlow had failed to present his claim to the administrator of the succession before filing suit. C. P. art. 984. But it is clear that the provisions of article 984, C. P., can have no application when no administrator has been appointed, and the claimant is in danger of losing his claim by reason of the effects of the succession having been taken possession of by the heirs or some of them or by strangers. For the writ of sequestration is a conservatory writ, intended to preserve the property to answer for the demands of the plaintiff, and the object of such writ cannot be frustrated by taking possession of the property of a succession and disposing of it before an administrator has or can be appointed. We think that the judge might even have ordered a sequestration *ex mero motu* on having his attention called to the facts by any party in interest.

■

## II.

On January 9, 1925, Ludlow presented his claim to the administratrix, who refused to acknowledge it; and at the same time presented another claim for $1,192.75 additional, which was also declined.

On January 28, 1925, Ludlow again filed suit, by supplemental petition, against the succession of the deceased, through the administratrix, for the aforesaid sum of $8,500 represented by notes, and also for the aforesaid additional sum of $1,192.71, of which more hereafter.

The business bought by the deceased from Ludlow consists of:

| | |
|---|---:|
| Cash in bank | $ 1,085 15 |
| Accounts receivable | 6,739 40 |
| Stock of tires and tubes | 2,945 23 |
| Stock of truck tires | 868 60 |
| Gas and electric deposit | 10 00 |
| Furniture and fixtures | 143 65 |
| Machinery and equipment | 100 70 |
| Paige touring car | 50 00 |
| Total assets sold | $11,942 73 |

'For which assets the purchaser (Mahoney) agreed to pay as follows:

| | |
|---|---:|
| Outstanding accounts assumed | $ 2,098 86 |
| Notes given to vendor ($6,000 and $2,500) | 8,500 00 |
| Total purchase price | $10,598 86 |
| Leaving excess of assets over purchase price | $ 1,343 87 |

## III.

■ The defense is: (1) That at the time of the sale the deceased was of unsound mind; and (2) that the assets were misrepresented.

The only suggestion of misrepresentation of assets is that of the accounts receivable ($6,739.40) about $930 could not be established by an expert accountant sent by the widow and her counsel to audit the affairs of the business sold. We see no evidence of fraud in that fact, but only one of error. The accounts may or may not have been due; but they were disputed by the parties against

whom the accounts ran, and it is not shown that they were actually due. Accordingly the deceased is entitled to credit for the amount of these disputed bills ($930), for, although the vendor of a credit does not warrant the solvency of the debtor, nevertheless he does warrant the existence of the debt. R. C. C. arts. 2646, 2647. The burden of proof was on the seller to establish the existence of the debt.

### IV.

The main defense is that the deceased was insane when he purchased the business and gave his notes for the purchase price.

This is based wholly on the condition of the deceased when, on December 31, 1923, he signed the notarial act of transfer of the business and gave the notes therefor.

It is shown that on December 24th (Christmas Eve), after signing a promise of purchase and sale, in exact accord with the notarial deed afterwards signed on December 31, 1923, the deceased drank heavily before returning home; that he was sick all day Christmas; that on the next day a doctor was sent for, and found him suffering from an attack of *delirium tremens;* that from that time on he remained confined to his bed until his death on January 6, 1924, suffering frequent recurrences of his attack of delirium tremens.

But the testimony of the notary who passed the act (at the home of the deceased), of a member of the bar who accompanied him as attorney for the purchaser, and of the party who had negotiated the sale, is that at the time of signing the act of sale, and the notes given in accordance therewith, the deceased, though in bed, was perfectly normal as to his mental condition, and understood perfectly what he was doing.

And the fact is that the notarial act was merely the formal consummation of what had already been agreed upon, and even carried out, by the parties long before there was any question as to the mental condition of the deceased.

The latter owned a drayage business, and also an automobile tire business adjoining or near the business conducted by Ludlow. He was desirous of selling his drayage business and was negotiating to that effect. He was also desirous of acquiring Ludlow's business. In the middle of November he began negotiating for the purchase of that business, which negotiations were terminated before December 1st; all details being then agreed upon and the deceased being put in possession of the business, although the price had not yet been paid. On December 24th the parties signed a formal agreement of sale, containing in detail the conditions of the sale, which was to be followed by a notarial act of sale to be passed on or before December 31, 1923.

The defendant admits that she went into possession of the business immediately after the death of her husband, and her claim is that she did so only to investigate the condition of the business which her husband was said to have bought. But the fact is she was in complete possession thereof. even changing the bank account from one bank to another and discharging the manager thereof, leaving her son in charge. Nor was there, up to that time, any claim that the deceased had not bought the business or that he was insane when he did so. And it is our conclusion that the deceased had been in full possession of the business from December 1st, and that the widow remained in possession from his death until the writ of sequestration issued, to wit, on March 24, 1924.

We think the deceased was perfectly aware of the nature of the act he signed on December 31st, which was nothing more than a formal carrying out of what he had already agreed to, and what he could have been compelled by law to carry out, and had in fact partially carried out already.

The fact that the deceased agreed to pay 20 per cent. on the amount of the notes in case of suit, and gave a blanket mortgage on all his property to secure the same (though void for want of proper description), is no evidence that he was insane when he did so, and is readily explained by the fact that the deceased expected to dispose of his drayage business and pay up out of the proceeds thereof.

We think the jury erred in finding for the defendant, and the judgment will therefore be reversed.

### V.

The claim of $1,192.71 is for $692.67 of bills (accounts receivable) assumed by the deceased, but not paid, and which Ludlow was obliged to pay, and for $500.04 of rent due on the leased premises, which Ludlow was also obliged to pay; Ludlow being liable for these amounts as original purchaser and original lessee, although said amounts had been assumed by the deceased.

Having found that the sale was valid, we think the succession is liable for these amounts.

### VI.

Since the taking of the appeal Ludlow has died, and his widow, Mrs. Mary Alice Ludlow, and sole heir, Harry A. Ludlow, have made themselves party hereto in his stead.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of Mrs. Mary Alice Ludlow and Harry A. Ludlow, for the full sum of seventy-five hundred and seventy dollars, $7,570 (say $8,500 less $930), with 7 per cent. interest per annum on $1,570 thereof and 6 per cent. interest on $6,000 thereof, all from December 31, 1923, and 20 per cent. attorney's fees upon the whole, and with recognition of the vendor's privilege on, and to be paid out of, the proceeds of the property sequestered and sold by the sheriff, and held

by him; the balance, if any, after payment of said proceeds, to be paid in due course of administration as an ordinary debt of said succession.

It is further ordered that said Mrs. Mary Alice Ludlow and Harry A. Ludlow do have further judgment against the succession of John L. Mahoney for the full sum of eleven hundred and ninety-two dollars and seventy-one cents ($1,192.71), with legal interest from January 9, 1925, payable in due course of administration as an ordinary debt of said succession.

It is further ordered that the succession of John L. Mahoney pay all costs of these proceedings in both courts.